*1286 RUCKER, Justice,
dissenting.
The majority works overtime and spends much ink to argue that Arlington Heights II is flawed and should not be followed. To be sure, as the Court of Appeals noted, “a uniform standard for determining liability based upon disparate impact remains elusive, and the disparate impact jurisprudence has been described as ‘an increasingly incoherent body of case law.’ ” Villas West II of Willowridge v. McGlothin, 841 N.E.2d 584, 599 (Ind.Ct.App.2006) (quoting Peter E. Mahoney, The End(s) of Disparate Impact: Doctrinal Reconstruction, Fair and Lending Law, and the Antidiscrimination Principle, 47 Emory L.J. 409 (Spring 1998)). But even with its imperfections, several state and federal jurisdictions continue to follow the Arlington Heights II methodology. See, e.g., 2922 Sherman Ave. Tenants’ Ass’n. v. District of Columbia, 444 F.3d 673, 680-82 (D.C.Cir.2006); Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 83-90 (1st Cir.2004); Reese v. Miami-Dade County, 242 F.Supp.2d 1292, 1304-06 (S.D.Fla.2002); Hill v. Cmty. of Damien of Molokai, 121 N.M. 353, 911 P.2d 861, 872-74 (1996). Other than to make it exceedingly more difficult for legitimate victims of housing discrimination to press their claims, I see no reason to abandon this precedent. Indeed, applying the Arlington Heights II factors, both the trial court and the Court of Appeals concluded that Villas West’s restrictive covenant violated the Federal Fair Housing Act because of its disparate impact on members of the African American community residing in the City of Kokomo. I agree and would affirm the judgment of the trial court. Therefore I dissent.
SULLIVAN, J., concurs.